D & H COMPANY, INC., a Texas Corporation, d/b/a Carriage Cleaners, Appellant,

v.

Walt SHULTZ, an Individual, and Ray D. Baker, d/b/a Walt Shultz Equipment and Manufacturing Company, Appellees.

No. 49768.

Supreme Court of Oklahoma.

May 23, 1978.

As Corrected May 25, 1978.

Henderson & Eberle by George L. de Verges, Oklahoma City, for appellant.

Turner, Turner & Green by Robert J. Turner and Frederick S. Lutz, Oklahoma City, for appellees.

DAVISON, Justice:

Appellant, D & H Company, Inc., a Texas corporation, doing business as Carriage Cleaners, purchased used dry cleaning equipment from Walt Shultz, an individual, doing business as Walt Shultz Equipment and Manufacturing Company. The used equipment, prior to delivery, was to be rebuilt, and was warranted as such. Prior to delivery of the equipment, the manufacturing company changed hands. The purchaser, Ray D. Baker, ultimately delivered the equipment. After delivery, Carriage Cleaners experienced great difficulty with the used equipment, and eventually brought suit against Walt Shultz and Ray Baker, alleging breach of warranty and fraudulent misrepresentation, alleging among other things that the used equipment was, in fact, not rebuilt. A jury trial was held, and at the close of plaintiff's evidence, the trial court sustained the defendants' demurrer to the evidence, entering judgment for the defendants. Appellant, Carriage Cleaners, appeals from the trial court's sustaining of the demurrer to the evidence.

The evidence at trial was clearly sufficient to go to the jury on the question of the existence of an express warranty, and breach of the warranty. The question presented here is whether the evidence, with respect to damages, was sufficient. The trial court held that it was not. Accordingly, the court sustained a demurrer to the evidence for the reason that damages, a necessary element of a cause of action for breach of warranty, were not shown.

Appellant buyer argues that the trial court took an unjustly restrictive view of the nature and measure of damages that might be used in determining damage to the buyer in the case before us. In so arguing, appellant calls the Court's attention to 12A O.S.1971, § 2–714, which deals with a buyer's remedies for breach in regards to accepted goods.

That Section provides:

"(1) Where the buyer has accepted goods and given notification (subsection (3) of Section 2–607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damage for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section may also be recovered."

Citing this Section, appellant argues that it need not have offered proof of the value of the equipment at the time of delivery, had it been conforming, and then offer evidence of the value of the non-conforming goods at the time of delivery. While it is true, that other factors, such as the cost of repair may be adequate proof of the difference in value between the conforming goods and the non-conforming goods, no such proof was offered at trial. In fact, at trial, no evidence was introduced showing the market value of the machine involved, nor the market value of the machine had it been conforming, nor was there any evidence as to the cost of repairs made, nor any evidence to support the notion that the cleaning equipment had no value at all. Indeed, the evidence demonstrated that the plaintiff, after receiving the equipment, used it, although with difficulty, for approximately two years.

█ There was however, evidence presented which showed *consequential* damages arising from the breach of warranty. Such consequential damages are recoverable, if proven, whether or not other items of damage were present.

12A O.S.1971 § 2–715 provides in part:
"(1) * * *

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty."

At trial, evidence of consequential damages was shown when one of the owners of the dry cleaning equipment, who operated the equipment and was a graduate of the National Institute of Dry Cleaning in Silver Spring, Maryland, testified that the equipment delivered used an excessive amount of "perk", a dry cleaning fluid. He testified that under ideal conditions, one drum of perk would clean about 12,000 pounds of clothing, and that he would have been satisfied had the machine cleaned 8,000 pounds to a drum. However, the machine as delivered, initially only cleaned 800 pounds per drum, and eventually after being worked on, cleaned only 2,000 pounds per drum of cleaning fluid. After presenting evidence as to how many thousands of pounds of clothes were cleaned per month, how many excess gallons of perk were used, and the cost of perk per gallon, the witness testified that the excessive perk used because the machine was malfunctioning, was costing his company approximately $350.00 per month. At arriving at this figure, the witness indicated they were using approximately 35 gallons of excess perk per week and that the average cost of perk during the periods covered was $2.50 a gallon—the price fluctuating during the period between $2.00 and $3.00 a gallon. We think that this evidence was sufficient to go to the jury on the question of consequential damages.

█ Appellee argues that no proper predicate was laid for this testimony, as the witness did not testify as to having operated used equipment before, nor had he testified to having used equipment manufactured by the same company who made the equipment involved. We need not discuss the merits of this argument, as no objection was made to the witness' testimony, attacking his competency to so testify. As there is no objection made to the testimony, the testimony is admitted, and once admitted without objection was properly before the trier of fact, and must be considered when

ruling on a demurrer to the evidence. See e. g., *P.E.A.C.E. Corp. v. Okla. Natural Gas Co.*, Okl., 568 P.2d 1273 (1977). The trial court's comments indicate that it did not do so. Accordingly, we reverse the trial court's ruling on the demurrer to the evidence as to the breach of warranty, for there was sufficient evidence to show consequential damages, amounting to approximately $5,000.00, which the jury could have considered.

We next consider the trial court's sustaining of the demurrer to the evidence to the cause of action based on fraud. In sustaining that demurrer, the trial court held that if there were any misrepresentations made as to the machine being rebuilt, there was no evidence showing that the misrepresentations when made were known to be false, or made with reckless disregard of the truth. In so ruling, the court pointed out that Mr. Shultz, who made the misrepresentations, if they were misrepresentations, no longer owned the company at the time of the performance of the contract. The evidence also demonstrated that at the time the contract was made, the appellant was aware that Mr. Shultz was considering selling his company. As the only evidence presented to support the contention that Mr. Shultz knew his representations were false at the time they were made, was the evidence tending to show that the warranty was breached, we hold that it was insufficient to give rise to an inference that Mr. Shultz made any statements which he knew to be false or made any statements with reckless disregard for the truth. In so ruling, we point out that Mr. Shultz, who made the representations, no longer owned the company at the time of the performance of the contract.

In this jurisdiction, the elements of actionable fraud are that the defendant made a material misrepresentation that was false, that he knew when he made the representation that it was false, or that it was made recklessly without any knowledge of its truth and made as a positive assertion, and that he made it with the intention that it should be acted upon by plaintiff, and that plaintiff acted in reliance upon it and thereby suffered injury. E. g., *State ex rel. Southwestern Bell Tel. Co. v. Brown*, Okl., 519 P.2d 491 (1974). In the case before us, one of the necessary elements to actionable fraud was not proven: that the statements were made recklessly, or were known to be false when made. Accordingly, we hold that there was not sufficient evidence to allow the question of fraud to go to the jury, as none of the evidence suggested that Mr. Shultz knew that the equipment he sold would not be delivered as represented, if in fact it was not so delivered. Accordingly, we affirm the trial court's sustaining of the demurrer to the cause of action of fraud.

Lastly, we note that appellant, in his brief, argues that he attempted to effect "cover", as defined at 12A O.S.1971 § 2–712.[1] That Section clearly provides that the "cover" provision contained therein applies only after a breach as set forth in 12A O.S.1971 § 2–711(1). The latter Section provides for the conditions under which cover may be available to the buyer as a remedy. Under the provisions of that statute, 12A O.S.1971 § 2–711(1), cover is available where:

1. The seller fails to make delivery.
2. The seller repudiates.
3. The buyer rightfully rejects the goods.
4. The buyer justifiably revokes acceptance.

1. 12A O.S.1971 § 2–712 provides:

"(1) After a breach within the preceding section the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

(2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (Section 2–715), but less expense saved in consequence of the seller's breach.

(3) Failure of the buyer to effect cover within this section does not bar him from any other remedy."

As there were insufficient facts presented at trial to show the existence of any of the conditions set forth above, we deem it unnecessary to consider the issue of cover in depth.

Having overruled the trial court's sustaining of the demurrer on the breach of warranty cause of action, we remand the cause for new trial on that cause of action as it relates to consequential damages.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

LAVENDER, V. C. J., and WILLIAMS, IRWIN, BERRY, BARNES and SIMMS, JJ., concur.

DOOLIN, J., concurs in part and dissents in part.