LPCX CORPORATION and Jon
R. Withrow, Appellees,

v.

Diane FAULKNER, R. Kevin Leonard,
David E. Palm, Greg L. Cook, Ran
Ricks, Jr., Pat O'Shea, Tom R. Gray,
III, Ed DeCordova, Toole–Walker Ex-
ploration, Larry Fryer, Richard Win-
zeler, Jack Rusher, Hoenig–Porter,
Ltd., James A. Anderson, Rick Russell,
James A. Kirk, Donald Resler, M.D.,
Robert O. Buchanan, Jerral W. Jones,
Homer L. Lawson, Ricks Drilling Pro-
gram 1976–2, Bill J. Sparks, Don Math-
is, Jane Mathis, Susan Emerick, R.R.
Robison Trust, and Larry Mullinix, Ad-
ditional Appellees,

v.

RED EAGLE OIL CO. and Harry
Johnson, Appellants.

No. 60828.

Supreme Court of Oklahoma.

May 14, 1991.

Rehearing Denied June 25, 1991.

H.B. Watson, Jr., Sharon L. Taylor, Watson & McKenzie, Oklahoma City, for appellants.

James M. Chaney, Kirk & Chaney, Oklahoma City, for appellee LPCX Corp. and additional appellees.

Gregory L. Mahaffey, Arthur W. Schmidt, Mahaffey & Gore, Oklahoma City, for appellee Jon R. Withrow.

HARGRAVE, Justice.

The present action, brought in the District Court of Major County, results from the development and operation of the Chester Young No. 1 well in Major County, Oklahoma. Prior to the drilling of this well, the leasehold was owned by Lenard Palm and Cook Exploration. Before drilling, LPCX sold its 50% interest to the appellees listed in the caption as additional appellees, and LPCX continued to represent these additional appellees in the operation of the well. Appellee Withrow purchased a 12½ interest from Red Eagle Oil Company, and participated in the development of the well as a nonoperating working interest owner. Thereafter Red Eagle owned a 37½ interest in the lease and was the operator of the well.

The Young well was drilled in June of 1978 into a unit of one section. It was completed into the Mississippi solid formation at a depth of 9,000 feet, producing both oil and gas. Production was sufficient to pay out Withrow's interest by June of 1980. Production was comparable with other similar wells in the area. The well was swabbed to increase production that month, and at the end of June, defendant's records show the well was shut in. Withrow's evidence tended to show that there was no indication the well was dying prior to this time. Thereafter Red Eagle performed a workover with their own tools, for the expressed purpose of repairing a casing leak at a cost of $45,863.60. Neither Withrow, LPCX nor any of the additional plaintiffs were notified of this work prior to commencement of the operation.

After the workover the Young well was allowed to produce only sporadically, amounting to 53 hours out of the ensuing 90 days. During these production periods the water/oil ratio was comparable to that production prior to the workover. Plaintiffs were of the opinion that such limited production was not a prudent operating decision, and notified the defendant Red Eagle of that opinion. The same letter sought information on the workover to repair a casing leak. Negotiations thereafter continued and two subsequent actions were taken by Red Eagle Oil Company. First, the defendant filed a lien against Withrow for failure to pay the workover costs charged by the defendant. Second, Red Eagle's offer to resign as operator of the well was accepted by letter. Filing of the lien resulted in the suspension of Withrow's oil runs by Champlin Oil Company, and Withrow paid the workover costs he is now trying to recover to enable him to again receive his oil run payment.

Upon the preceding factual basis, the plaintiffs LPCX and Withrow brought four causes of action against Red Eagle and Harry Johnson. The first cause of action sought recovery for lost revenues as a result of failure to produce the well and punitive damages. The second cause of action sought a determination that LPCX and Withrow were not liable for the expenses of repairing the casing leak. The third cause sought the return of the amount Withrow had paid for his share of the workover. The last cause sought an order decreeing that Red Eagle had effectively resigned as operator of the Young well. This last cause was not tried to the jury and is not an issue in this appeal.

Plaintiffs contend that the rework operation, which was an attempt to correct a casing leak, was both unnecessary and unauthorized under the provisions of Section 11 of the parties' operating agreement. It is the plaintiff's position that the operating agreement specifies notice shall be made before rework operations are begun and that prior notification was not made, that no authorization for expenditures (AFE) letter was sent to him, and in fact he had no actual advance notice.

Plaintiff's testimony shows his expert opinion to be there was no indication of a casing leak in the Young No. 1 well at the time it was shut in. This testimony additionally shows attempts to repair a casing leak are rework operations, that no prior notification was made, and that receipt of a daily drilling report is not prior notice contemplated in the operating agreement. Withrow also presented evidence that the well should have been placed on continuous production after workover operations

ceased, considering the condition of the well at that time. It was plaintiff's position that the imprudent operation of the Young well resulted in a loss of income to him of $19,049 in a period of two years.

At trial, Withrow produced evidence tending to show that the defendants misrepresented well production data in such a manner as to produce the conclusion that the Young well had ceased to be commercially productive. The intent of such a course of action was to pursuade plaintiffs the only viable alternatives left for the well were to sell their interest to Red Eagle or convert it into a salt water well.

Contrarily, the defendants, Red Eagle Oil Company and Harry Johnson, took the position during the trial of this action that the well was shut in because it had a ruptured casing and that the repair cost of over $45,000.00 was the actual expenditure made in furtherance of that repair. They contended that Section 11 of the operating agreement was not triggered, and that if it was, their action complied with that paragraph. An outline of the defense presented includes several points: Repair of a casing leak is not a rework operation as that term is used in Section 11; repair of a casing leak is an emergency measure, which requires no advance notice under the last-mentioned section; if the repair is considered to be a rework operation under the operating agreement, advance notice was not required because when operations to repair began, it was not thought that the remedial action would cost more than $10,-000.00 (the threshold sum at which advance notice of a rework operation is deemed necessary); the notification made in the daily drilling report suffices to comply with the terms of the contract.

In addition to the above enumerated defenses, the defendants asserted a counterclaim against LPCX for its proportionate share of the operating costs incurred by Red Eagle Oil Company on LPCX's behalf in performing the workover. Red Eagle also asserted a lien arising from the provisions of the operating agreement for these costs and prayed the court for foreclosure thereof.

A four-day jury trial was held in the cause. At the conclusion of the trial Red Eagle renewed their demurrer to the plaintiffs' evidence in regard to the plaintiffs' claim for damages, by virtue of fraud and conspiracy to defraud them of their interest in the well. This demurrer was sustained. The issues remaining to be decided by the jury, after LPCX abandoned its first cause of action and the demurrer was sustained to Withrow's first cause of action, was liability for the workover expenses. (Withrow's claim was for return of these expenses and LPCX asserted they were not obligated to pay them.) Red Eagle Oil Company demanded that LPCX pay its share of the workover costs. The jury returned a verdict finding that Withrow was entitled to a return of the expenses and LPCX and the additional plaintiffs were not obligated to pay workover or operating expenses. Judgment was entered in accordance with the jury verdict, and attorney fees were awarded to LPCX and Withrow. From this judgment the defendants appeal.

The defendants assail the judgment on several points. It is argued before this Court there is no competent evidence to sustain the jury verdict, the jury was improperly instructed, and the jury's verdict forms were improper. The trial court's award of attorneys' fees is also appealed. It is submitted that the trial court erred in awarding attorneys' fees to the plaintiffs at all, secondly, the award made was excessive and thirdly, the trial court erred in not awarding the defendants their attorneys' fees to be taxed as costs.

■ Appellants first urge, as grounds for reversal of this verdict and judgment, there is no competent evidence supporting it. It is submitted that Section 5 of the operating agreement specifies that the operator, Red Eagle Oil Company, is not to be held liable for losses or liabilities "except such as may result from gross negligence or from breach of the provisions of this agreement". Appellees respond to this argument by pointing out their cause, as submitted to the jury, was based upon breach of the operating agreement, not the

liability for gross negligence provision. Appellants' response to this point in the reply brief is a further assertion that Article II, Section 8 of Exhibit B attached to the operating agreement states the "Operator shall charge the joint account with the following items: ... All costs or expenses necessary for the repair or replacement of Joint Property made necessary because of damages or losses incurred by fire, flood, storm, theft, accident or other cause, except those resulting from Operator's gross negligence or willful misconduct...." Red Eagle posits in the reply brief that this clause, in effect, removes the aforementioned liability for breach of the terms of the operating agreement, and leaves them liable only for gross negligence. The Court notes that Article II, Section 8 of Exhibit *"C"* (not B, as referred to in the brief) is entitled Accounting Procedure for Joint Operations. There is no basis for interpreting the contract so that Exhibit "C" (Accounting Procedures) controls over the body of the operating agreement. That fact is self-evident from the express language of the operating agreement's provisions for costs and expenses, Section 8 quoted here:

> Except as herein otherwise specifically provided, Operator shall promptly pay and discharge all costs and expenses incurred in the development and operation of the Unit Area pursuant to this agreement and shall charge each of the parties hereto with their respective proportionate shares upon the cost and expense basis provided in the Accounting Procedure attached hereto and marked Exhibit "C". *If any provision of Exhibit "C" should be inconsistent with any provision contained in the body of this agreement, the provisions in the body of this agreement shall prevail.* (emphasis added)

Whatever validity appellants' argument has is directly refuted by the plain language of the contract. Therefore, appellants' contention that there is no competent evidence to support the judgment, because the contract limited liability to acts resulting from gross negligence or willful conduct is not well founded. Liability results from breach of the provisions of the agreement as the contract provides.

■ Insofar as Red Eagle argues there is no evidence to support a verdict in favor of Withrow for return of his workover costs and in favor of LPCX as to non-liability for those costs, the argument is without basis and is insufficient to impeach the validity of the jury verdict and judgment. Red Eagle submits LPCX did not present evidence to show a breach of the provisions of the operating agreement. As LPCX notes, however that entity adopted Withrow's evidence as its own and the evidence of Withrow must be considered in regard to this proposition.

The transcript of this trial contains ample evidence to support a jury verdict for the plaintiffs for non-liability for the disputed workover expenses. Withrow testified as an expert in the field of geology that in his opinion there was not a casing leak in the well, and stated the reasons for this conclusion to the jury. From this evidence the jury could have determined that the rework was done in a grossly negligent manner in breach of the provisions of the operating agreement.

■ The jury was also entitled to determine from the evidence that the operating agreement was breached even if they had determined that the casing had parted and a casing leak did exist. Withrow, and LPCX through adoption of Withrow's evidence, presented evidence that the rework operation was accomplished in violation of Section 11 of the operating agreement set out below.[1] Indeed this contention is a

---

1. "Without the consent of all parties: (a) No well shall be drilled on the Unit Area except any well expressly provided for in this agreement and except any well drilled pursuant to the provisions of Section 12 of this agreement, it being understood that the consent to the drilling of a well shall include consent to all necessary expenditures in the drilling, testing, completing, and equipping of the well, including necessary tankage; (b) No well shall be reworked, plugged back or deepened except a well reworked, plugged back or deepened pursuant to the provisions of Section 12 of this agreement, it being understood that the consent to the reworking,

major part of this action as presented to the jury. Section 11(B) provides that no well shall be reworked except in accordance with Section 12 of the agreement, which is entitled "Operations by less than all parties". No contention is made that the provisions of Section 12 were complied with. Withrow demonstrated the provisions of Section 11 were not complied with. There was no attempt to show prior notification of the reworking operation, as provided for in 11(C) of the agreement, although the defendants attempted to convince the jury that drilling reports, showing work in progress, fulfilled the requirement. The plaintiffs produced evidence that the rework operation would reasonably be expected to cost more than the $10,000.00 specified in Section 11 and that the actual cost of the operation was more than four and one-half times that amount. This testimony supports a determination that Section 11(C) was violated as to prior notification of a rework operation. The defendants contend that repairing a parted casing is not a rework operation as that term is used in Section 11, but *defendants'* witness, Darrell Mahlock, testified that casing leak repairs were workover operations, and that a workover rig was used to accomplish the task.

Similarly the defendants' contention that repairing this casing leak was an emergency and thus not subject to the prior notification provisions of Section 11, is not the only evidence presented to the jury on this issue. Withrow testified that the information provided by the defendants on the well conditions at the time the leak was present did not show emergency conditions.

It is true that the jury was presented with evidence that conflicts with that summarized here which is supportive of the jury's determination that the operating agreement was breached by the method this workover was accomplished, but as noted by the appellees the verdict of the jury is conclusive as to all disputed facts and conflicting statements and where there is any competent evidence to support, or reasonably tending to support the verdict of the jury that determination shall not be disturbed on appeal. *Walker v. St. Louis–San Francisco Ry. Co.*, 646 P.2d 593 (Okl. 1982), *Silk v. Phillips Petroleum Co.*, 760 P.2d 174 (Okl.1988).

The appellants, Johnson and Red Eagle, also propose the evidence will only support a conclusion that Withrow either became a non-consenting party or should be held to have impliedly consented to the workover. In relation to this contention appellants cite *Bluebonnet Oil and Gas Co. v. Panuco Oil Leases, Inc.*, 323 S.W.2d 334 (Tex.Civ. App.1959). This case is not in point with the proceeding before the bar for the very reason that the jury was entitled to determine Section 11 of the operating agreement was breached. In *Bluebonnet, supra,* the non-operating party was found to have *actual* notice *prior* to commencement of operations. Similarly appellants' contention that the evidence establishes only that Section 12 was applicable and Withrow and LPCX were non-consenting parties must fail. The only item in the record that would support such a conclusion is that Withrow did not consent. The provisions of Section 12 were not brought into play by the conduct of either party under the evidence presented in this cause. The first paragraph of Section 12 provides,[2] inter

plugging back or deepening of a well shall include consent to all necessary expenditures in conducting such operations and completing and equipping of said well to produce, including necessary tankage; (c) Operator shall not undertake any *single project reasonably estimated to* require an expenditure in excess of Ten Thousand and 00/00 Dollars ($10,000.00) except in connection with a well the drilling, reworking, deepening, or plugging back of which has been previously authorized by or pursuant to this agreement; provided, however, that in case of explosion, fire, flood, or other sudden emergency, whether of the same or different nature,

Operator may take such steps and incur such expenses as in its opinion are required to deal with the emergency and to safeguard life and property, but Operator shall, as promptly as possible, report the emergency to the other parties. Operator shall, upon request, furnish copies of its 'Authority for Expenditures' for any single project costing in excess of $5,000.00."

**2.** "If all the parties cannot mutually agree upon the drilling of any well on the Unit Area other than the test well provided for in Section 7, or upon the reworking, deepening or plugging back of a dry hole drilled at the joint expense of

alia, that if all parties cannot agree upon the reworking of any dry hole or well not then producing in paying quantities, the parties wishing to rework are to give notice of the proposed operations, with the particulars of the proposal, to the other parties. Then these parties have forty-eight hours to respond. The section, by its express language, is inapplicable. The Young No. 1 was neither a dry hole nor was it not then producing in paying quantities. Additionally no advance notice was made to any party. There is no evidence which would have justified a finding that a Section 12 operational situation was facing the parties. Consequently this assertion of the defendants is rejected.

■ The defendants urge reversible error was committed by the trial court when it refused to instruct the jury in accordance with defendants' requested instruction number 12. That instruction was to have informed the jury that if they found plaintiffs had no notice of the rework operation, they must find plaintiffs to be non-consenting operators under Section 12 of the operating contract and entitled to recover 300% of the costs of repair chargeable to plaintiffs before plaintiffs were again entitled to share from the proceeds of production. It is contended that this failure to instruct did not apprise the jury of its defense. This instruction assumes there was evidence that Section 12 was applicable to this situation. There is absolutely no justification in the record to support the conclusion that the Young well was a dry hole. Similarly, the evidence is also lacking to support the theory that the well was not producing in paying quantities, or capable of producing in paying quantities during the times material to this action.

■ In their brief the defendants also raise as error the failure to give an instruction on implied consent. That instruction stated in essence that if the plaintiffs became aware of the casing repair operation while they were taking place, the plaintiffs must be held to have impliedly consented to such operations and must pay their share of the rework. The trial court did not err in refusing to so instruct the jury. As previously discussed, the non-consent paragraph is not applicable under the evidence before the court and the jury in this action. Appellants cite *Bradley Chevrolet, Inc. v. Goodson*, 450 P.2d 500 (Okl.1969), and other cases for the proposition that it is the duty of the trial court to instruct the jury as to the law applicable under the evidence and that where instructions fail to present a theory under which the case is tried and evidence was introduced and that theory goes to the right to recover, reversible error is committed. As an abstract proposition this statement of the law is assuredly correct, however there was no evidence that paragraph 12 was applicable because there was no evidence in the record that the well was not producing in paying quantities at the time the workover started, or that the well was a dry hole. Therefore no error is demonstrated by the fact that the trial court refused to instruct on the issue of implied consent. Implied consent is provided for by failure to respond to a rework operation notification in Section 12 of the operating agreement.

■ Error in evidentiary rulings is raised by the defendant-appellants in the third proposition of their briefs. Admission of evidence of casing repairs in similar wells is one point raised. The second is error in allowing testimony to be intro-

---

all parties or a well jointly owned by all the parties and not then producing in paying quantities on the Unit Area, any party or parties wishing to drill, rework, deepen or plug back such a well may give the other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the operation. The parties receiving such a notice shall have thirty (30) days (except as to reworking, plugging back or drilling deep-

er, where a drilling rig is on location, the period shall be limited to forty-eight (48) hours exclusive of Saturday or Sunday) after receipt of the notice within which to notify the parties wishing to do the work whether they elect to participate in the cost of the proposed operation. Failure of a party receiving such notice to so reply to it within the period above fixed shall constitute an election by that party not to participate in the cost of the proposed operation."

duced, while the third point is the admission and rejection of certain exhibits.

The point made by appellants with regard to the casing repair evidence concerns a motion in limine filed prior to trial. The appellants note the transcript reflects the court granted the motion in part, ruling that evidence of wells in contiguous sections would be admissible in respect to their geology and production records. Evidence of improper operations went to the fourth cause of action which was not before the jury, and therefore that evidence was not admissible. The trial judge's preliminary ruling did not end with that statement, however. The court stated that the evidence of other wells in the field could be relevant for some purposes and distance from the Young No. 1 would be a matter to bear on the weight of the evidence. The court went on:

> But to say that we have a one well field and that they—their little minds cannot go across that section line is going to insult the jury and I think it would be damaging not to allow that kind of testimony. But I don't think we can go out for five miles and just chat indiscriminately about conditions all over the country....

This language appears in the trancript before the actual trial began. At that time rulings on such motions are advisory in nature until the point in the trial where the evidence is sought to be admitted. The trial judge finally determines the question of admissibility at the time the evidence is offered, considering the facts and circumstances then before the court. *Middlebrook v. Imler, Tenny & Kugler, M.D.s*, 713 P.2d 572 (Okl.1986), *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121 (Okl.1984). When the issue arose during examination of a witness, the issue being explored was the reasonableness of the defendants' assertion that Section 11 of the operating agreement did not require notice of the rework to other parties. That section states that the operator shall not undertake any operation reasonably expected to require an expenditure of more than $10,000.00. The question was relevant, because it inquired into similar incidents of

split casing repairs in wells of the same general nature in the area which were repaired by the defendants. Neither the question nor the answer went to improper operations, and thus the question asked was relevant, material, and not within the scope of the motion in limine. This evidence was not erroneously admitted as argued by the defendants.

■ A second motion in limine was filed by defendants to restrict the jury from being informed that there was an issue of theft of oil from the Young well. Defendants contend that Withrow elicited testimony from a witness to the effect that he was hired by Withrow to gauge the well and that he gauged it in the presence of O.S.B.I. agents, in direct contravention of the trial court's ruling. The trial court actually stated prior to trial "... I think that the motion should be sustained with reference to any episode that would be like the unmarked truck backing up to a tank and doing something".

In accordance with the authority cited above the objection to this evidence must be refused. The proper time to object is at the time the question is asked. The question objected to proceeded as follows.

Q. And can you tell me what your instructions were?

A. He said just to go out and gauge the tanks and read the gas meters and you know, just check the well like I owned the well myself.

Q. And did you follow those instructions?

A. Yes.

Q. And did anyone witness this with you?

A. Yes.

Q. Who witnessed it?

A. Gerald Fleming and some O.S.B.I. agents.

The questioning proceeds from this point for another page in the transcript. At that point an objection was made but it does not reach the point made on appeal. The objection is an objection to reading from the gauging tickets unless and until they were admitted into evidence. In addition to the

point that no timely objection was made, there appears a lengthy inquiry by the appellants in reference to the presence of these agents. The evidence cannot now be made the basis of a reversal upon appeal, as the evidence was admitted without objection, even if it was concluded the evidence of existence of witnesses to the gauging procedure was prohibited by the ruling on the pretrial motion (a point not at all clear). Ordinarily, where a party fails to object to inadmissible evidence at the time the question is asked, he will be deemed to have acquiesced in the introduction of that material, to have waived all objections to its admissibility, and may not on appeal complain of its introduction. *Bauman v. International Harvester Co.*, 191 Okl. 392, 130 P.2d 287 (1942), *D & H Co., Inc. v. Shultz*, 579 P.2d 821 (Okl.1978).

■ The appellants propose that reversible error was committed by the trial court in the admission of plaintiffs' exhibits 9, 10, and 11, and also in excluding defendants' exhibits 1 and 2. Plaintiffs' evidence, consisted of letters written after the lawsuit was filed and refer to inability of the plaintiff to gain access to information on production from the Young No. 1 well. It appears from an examination of the transcript these letters are material. The court had issued an order in this case requiring the defendants to strictly comply with access to information provisions of the contract. Testimony was taken that the access was not allowed. The letters related to this problem, which is apparently material to the plaintiffs' claims that the terms of the operating agreement were breached by defendant and well performance was misrepresented by them.

The exhibits excluded from evidence when offered by the defendant, were not timely exchanged before trial. The trial court had previously sustained defendants' objection to plaintiff's exhibits not exchanged before these defendants' exhibits were offered, and the court informed the attorneys he intended to apply that ruling throughout the trial, and he did.

No authority is cited in either of the defendants' briefs showing the admission and rejection of these exhibits was error. These allegations are made by argument only. The fact that the argument is not convincing on its face has been demonstrated above. Alleged errors in the trial of a cause presented simply as argument unsupported by citations of error are not considered on appeal unless it is apparent without further research that they are well founded. *Paris Bank of Texas v. Custer*, 681 P.2d 71 (Okl.1984), *Horst v. Sirloin Stockade, Inc.*, 666 P.2d 1285 (Okl.1983). Defendants' argument relative to the acceptance and rejection of evidence is not sufficient to demonstrate reversible error.

■ Defendant-appellants' fourth proposition of error requests this Court to reverse the jury verdict and judgment based thereon because of the trial court's failure to provide separate jury forms for recovery by Red Eagle Oil Company. Red Eagle's counter-claim against LPCX sought recovery of $35,535.30 in workover expenses which LPCX had not paid. One jury form furnished by the trial court allowed the jury to return Withrow's payment of $5,732.95 in workover expenses, and adjudged that LPCX did not owe the expenses. The other jury form required LPCX to pay its share of the expenses, and found that Withrow was not entitled to return of his money. In other words, the jury forms required both parties to pay for the workover and operating expenses, or found that neither plaintiff owed those sums. The defendants object to the fact that the sums listed in these verdict forms represent both monthly operating costs as well as the workover expenses. The plaintiffs point out that the defendants did not object to the instructions nor did they submit different verdict forms. The defendants' counsel is shown to have agreed to the verdict forms in the transcript. At the time the verdict forms were discussed before jury deliberations the defendants' counsel was clearly referring to, and approved a verdict form in accord with that actually given.[3]

**3.** "Mr. Watson: Oh there is no question that he's

paid his share of the forty-five thousand and

This interpretation of the conversation between counsel and the court is confirmed by an examination of the transcript of the motion for new trial as follows:

> The Court: Now you are also saying after I drew up separate verdict forms and brought them in here and everybody came to the bench and you said no, that's not right and tossed those and we wrote on the ones that I had and I went and typed those up and now you're saying that I did it wrong, aren't you in your motion for new trial?
>
> Mr. Watson: That is in effect what I'm saying. I am saying that the jury could not have awarded a verdict separately against these two defendants,—two plaintiffs.

It is thus established that the defendants were content to try this case on an all-or-nothing basis by submitting the two causes of action as a set of jury verdicts allowing plaintiffs to recover all their claims of their third cause of action or let the jury award the defendants the total of their counter-claim. The purpose of an appeal is not to present the parties a trial de novo but to review the correctness of rulings made in the trial court. Having presented their defense to the court on one theory, the parties are bound thereby, and are not allowed to change the theory on appeal. *Union Texas, etc. v. Corporation Commission, etc.*, 651 P.2d 652 (Okl.1982), cert. den. 459 U.S. 837, 103 S.Ct. 82, 74 L.Ed.2d 78, and *Harper Oil Co. v. Corporation Commission*, 459 U.S. 837, 103 S.Ct. 82, 74 L.Ed. 78 (1982). This precept has been applied in a case in which a single verdict has been returned on separate causes of action. *Midwest Engineering & Construction Co.*

*v. Electric Regulator Corp.*, 435 P.2d 89 (Okl.1967). The defendants cannot secure reversal on an error they have initiated in the trial court or secure a reversal here on a position inconsistent with that taken in the trial court. Appellees contend that given these facts the defendants have waived any error in the verdict forms given to the jury. The defendants take the position that these costs were separately stated and the jury could separate them into operating expenses and workover costs, citing page nine of defendants' exhibit nine. Such conclusion is dubious. The page referred to last above shows only a total figure of $35,535 and that figure is an aggregate of operating expenses and workover expenses. Similarly it is stated that defendants' exhibit ten breaks down the cost figures. However exhibit ten is a total alleged to be owed by the LPCX group by individuals and does not break the figure down to operating costs and workover costs.

■ Where a cause consisting of two or more separate causes of action is tried to a jury separate verdict forms for each cause of action should be submitted to the jury. *Stephens v. Draper*, 350 P.2d 506 (Okl. 1960). From an early time however this Court has held that the failure of the defendant to object to a general verdict on separate causes of action is deemed a waiver of the objection to the general form of the verdict. *Stakis v. Dimitroff*, 154 Okl. 9, 6 P.2d 1053 (1932). The guiding precept applicable here, is separate forms for verdicts should be submitted to the jury and returned by them. But this requirement is waived where there is no timely request for

you've held—I was trying to think have we identified all these other people without naming them. I don't *think* we identified them and have referred to them as LPCX et al., but couldn't we say they are assessing against the plaintiffs named in instruction No. 12?

The Court: The other plaintiffs?

Mr. Watson: The plaintiffs other than Withrow.

Mr. Mahaffey: I don't care which way it is handled, either way. We can take it out and put in the verdict form.

The Court: Additional plaintiffs.

Mr. Mahaffey: I think that might be confusing to take it out and put it in the verdict form and

say assessing all plaintiffs except plaintiff Withrow their proportionate, but I think it would be assessing the plaintiffs their proportionate share and on the verdict form Plaintiff Withrow would be zero.

The Court: I want the amount in there. I will say except as to Plaintiff Withrow.

Mr. Watson: Fine.

The Court: *Their proportionate costs etc.* Did that come around to a point of acceptance on the part of defense counsel?

*Mr. Watson: Yes Sir that's fine."* (emphasis added)

separate verdict forms made and where it does not appear that the use of the general verdict form has resulted in substantial prejudice. *Montgomery Ward & Co. v. Oldham*, 391 P.2d 283 (Okl.1964), *Shell Oil Co. v. Tate*, 194 Okl. 23, 147 P.2d 445 (1944), *Cooper v. Woodruff*, 357 P.2d 969 (Okl.1960), *Bunch v. Perkins*, 198 Okl. 517, 180 P.2d 664 (1947). The defendants' claim that aggregating those two causes of action into one verdict form was fundamental prejudicial error, and the verdict and judgment thereon must be reversed even though no objection was made to the form of the verdict at the time of trial. They base this claim on the fact that the record is clear that operating expenses were incurred and they were owed at the time of trial. It is argued that since this evidence is unrefuted in the record, substantial prejudice to the defendants is established. The transcript does establish, without contradiction, that operating expenses were incurred. It is also true that a major portion of the trial of this case dealt with the reasonableness and necessity of Red Eagle Oil Company's charges, whether the well was operated prudently and the operations were carried out with due care.

A review of the transcript shows a dispute over the reasonableness of all charges and operations carried on by the defendants, even though as defendant says, there is no dispute that they existed. There is an additional reason to find that the erroneous verdict forms are here found not to be fundamentally prejudicial. Defendants' claim in defense of plaintiffs' contention that a workover was done without proper notice was that the casing leak did not amount to a workover. It was contended that notice was not required because the expense of the repair was not a workover, even though these expenses aggregated more than the $10,000.00 limit specified by the contract. Given that position, these expenses would then simply be classed as operating expenses, which were either owed or not owed. It appears that until the verdict came in this was the defendants' trial strategy throughout the four-day trial. As such, in the face of defendants' approval of the verdict forms

no fundamental prejudicial error is found. It is therefore impossible to say that the defendants have demonstrated clear prejudice because the record shows operating expenses are due and owing without contradiction. In the absence of timely objection, this error is insufficient to warrant reversal of the verdict and judgment of the jury.

■ The last three propositions of error raised by appellants relate to attorneys fees and costs awarded in this cause. It is argued the court abused its discretion in denying Red Eagle's motion to tax costs and awarding LPCX and Withrow their costs. In this regard it is contended that Red Eagle is entitled to costs as a prevailing party under 12 O.S. § 929, and if not under that statute then Red Eagle's alternative position is that it is entitled to its costs under 12 O.S. § 930. Red Eagle and Johnson also allege the trial court abused its discretion in awarding Withrow any attorneys fees. Lastly defendants contend that the trial court abused its discretion by awarding Withrow and LPCX an excessive amount of attorneys fees.

Withrow and LPCX alleged in their first cause of action that Red Eagle entered into a conspiracy to defraud them of the profits of the Young No. 1 well. They alleged they were damaged in the amount of $73,000.00 plus $631.00 per day for each day the well was shut-in. Punitive damages were sought for this wrongful conduct. It is argued by Red Eagle and Johnson that the majority of its efforts was directed to defending this cause of action, and thus that they are entitled as a matter of law to be awarded their costs in defending this claim, despite the fact that the judgment in this action was against defendants. The judgment rendered in this action was against defendants and for LPCX and Withrow, ie., Withrow was adjudged entitled to the return of its costs paid, and LPCX was adjudged not liable to pay those costs to Red Eagle at all. Under these facts, the Court cannot but conclude that plaintiffs are the prevailing parties in this action and were properly awarded their costs under 12 O.S. § 928 providing as it

does that "[c]osts shall be allowed of course to the plaintiff, upon a judgment in his favor, in actions for the recovery of money only or for the recovery of specific, real or personal property".

The defendants also base an allegation of error on the proposition that the trial court erred in awarding attorneys fees to Withrow and LPCX under 12 O.S. § 936. The defendants state that Withrow's third cause of action sought recovery of money paid to fix the casing leak. Appellants state that such a cause of action is not a civil action on an open account nor a contract for the sale of goods, wares or merchandise, nor a civil action brought for labor or services. Also the defendants take the position that the operating contract does not provide for attorneys fees where a nonoperator questions the charges made by the operator.

The plaintiff LPCX contends it is entitled to attorneys fees totalling $23,000.00. This supposition is based upon two theories. First, Johnson and Red Eagle were attempting to foreclose upon a lien against LPCX under 42 O.S. § 176 and the alternative argument proposed by the plaintiff is that the defendant is liable for fees taxed as costs under 12 O.S.1981 § 936.

The plaintiff, Withrow, submits he is entitled to attorneys fees taxed by the court as prevailing parties under the language of the contract itself and under the statutory authority of 12 O.S.1981 § 936. Withrow requested a reasonable fee of $41,000.00.

The trial court, after hearing the testimony relative to the attorneys fees, determined and awarded LPCX the total sum of $7,999.44 as fees and expenses—$6,231.07 as attorneys fees and $1,768.37 as actual expenses. This figure was arrived at by examining the issues that LPCX prevailed upon and the work done on those portions of the case. Withrow was awarded $8,930.75 total, or $8,300.00 attorneys fees and $630.75 actual expenses. In the transcript it appears the basis of these awards was the statute 12 O.S.1981 § 936, and costs were taxed against the defendant under 12 O.S.1981 § 928.

The defendants argue the trial court erred in awarding any attorneys fees to Withrow at all. The statute under consideration, 12 O.S.1981 § 936, provides:

In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The defendants argue that Withrow sought damages for breach of a joint operating agreement. He prevailed on his third cause of action, which was for return of workover expenses ultimately found not owed by Withrow to defendants. Defendants correctly note that an express contract which defines the duties of the parties is not an open account. *Sanditen v. Brooks Flame–Spray, Inc.*, 403 P.2d 471 (Okl.1965). The defendant contends that this action cannot be determined to be an action for damages for labor or services rendered. In *Kay v. Venezuelan Sun Oil Co.*, 806 P.2d 648 (Okl.1991) and *Russell v. Flanagan*, 544 P.2d 510 (Okl.1975), this Court stated the labor or services provision of section 936 is limited to a civil action for labor or services. There we said that the attorney fee provision for labor or services is limited to situations where "suit is brought for labor or services rendered". *Russell, supra*, at 512, and not to contracts relating to labor or services. Thus in *Russell, supra*, the Court held a damage suit for breach of warranty in a labor contract did not come within the provisions of the statute.

In *Ferrell Const. Co. v. Russell Creek Coal Co.*, 645 P.2d 1005 (Okl.1982), the Court stated a suit for lost profits occasioned by a breach of a labor and services contract did not come within the provisions of 12 O.S.1981 § 936. The Court's analysis of this provision was further detailed in *Burrows Const. Co. v. Independent School District No. 2 of Stephens County,*

704 P.2d 1136 (Okl.1985) at 1138. The Court stated:

It is the underlying nature of the suit itself which determines the applicability of the labor and services provisions of section 936. If the action is brought for labor and services rendered, the provision of Section 936 apply. If the nature of the suit is for damages arising from the breach of an agreement relating to labor and services the provisions of this section do not necessarily apply. The question is whether the damages arose directly from the rendition of labor or serices, such as a failure to pay for those services, or from *an aspect collaterally relating to labor and services*, such as a loss of profits on a contract involving the rendition of labor or services. (footnotes omitted) (emphasis added)

Withrow's action sought the return of workover expenses for the reason that those services were not accomplished and did not accrue *in accordance with the provisions of the contract*. As such, under the three cases last cited, the prevailing party, Withrow, is not entitled to an attorneys fee to be taxed as costs in the action. Withrow additionally makes the statement that it is axiomatic that he is entitled to attorneys fees under the language of the contract. No authority is cited for this statement and the argument is not apparently valid without further research, since the language of the contract does not so provide. As previously noted, arguments unsupported by authority that do not appear well taken without further research, are insufficient. The judgment of the trial court awarding attorneys fees as costs to Withrow is reversed. Finding no statutory authority to award Withrow attorneys fees as costs, it is unnecessary to answer Withrow's argument as counter-appellant that he was awarded insufficient costs by the trial court. The trial court did not err, however in awarding Withrow his costs under 12 O.S.1981 § 928, as the prevailing party in the action. Although plaintiff Withrow is not entitled to an attorney fee taxed as costs, he is the prevailing party in the action. His action for return of well workover expenses was successful. Although he did not prevail on all of his causes of action tried in this case he is the prevailing party. It is not necessary that he prevail on all issued to be awarded costs, it is sufficient that he recovered a net judgment in the action. *Mid–State Homes, Inc. v. Johnston*, 547 P.2d 1302 (Okl.1976) and *Commercial Communications, Inc. v. State, etc.*, 613 P.2d 473 (Okl. 1980).

■ The defendants also contend that they are entitled to a reversal of the award of attorneys fees made by the trial court against them and in favor of LPCX. The defendants admit, however that LPCX, having successfully defended the counterclaim which sought to foreclose its contractual lien for services and expenditures on the Young No. 1 well, is entitled to attorneys fees taxed as costs under 42 O.S.1981 § 176. Inasmuch as LPCX successfully defended against that action to foreclose that lien LPCX is the prevailing party. *Sooner Pipe & Supply Corp. v. Rehm*, 447 P.2d 758 (Okl.1968). As such, LPCX is entitled to its costs under 12 O.S.1981 § 929.

■ The remaining contention made by defendants is that the award of attorneys fees to LPCX was excessive. It is to be noted in this regard that the costs and fees, testified to as reasonable by that plaintiff and its witnesses, was for $23,805.66. The trial court awarded only $7,999.44. This figure is roughly 33.6% of the fee requested. Defendants argue that the record shows little of the evidence put on at trial related directly to this claim. The fee actually awarded is less than 25% of the claim successfully defended against. A review of the record, transcript of the trial, and post-trial proceedings demonstrates that the actual trial was directed differently than the pre-trial discovery and efforts of the parties seemed to predict. The issues involved were related. It cannot be said this work done is attributable only to one of the party's claims or defenses or counter-claims and its defense. Where a question on appeal presents the issue of the reasonableness of attorneys fees awarded by the trial court the standard for review-

ing that award is abuse of discretion. *State of Oklahoma ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659 (Okl.1979). Considering the factors noted above in addition to the transcript of the hearing on attorneys fees, it cannot be said that the trial court abused its discretion in awarding attorneys fees to plaintiff LPCX.

The judgment of the trial court is accordingly affirmed in all parts save that provision therein granting attorneys fees to plaintiff Withrow. The judgment awarding attorneys fees to Withrow, to be taxed as costs, is reversed.

AFFIRMED IN PART; REVERSED IN PART.

OPALA, C.J., and LAVENDER, SIMMS, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., concurring in part & dissenting in part: I would overrule *Russell v. Flanagan,* 544 P.2d 510 (Okl.1975), and its progeny.

HODGES, V.C.J., dissents.