Jack ELMORE, Plaintiff in Error,

v.

Dr. Mae Derr McQUESTION,
Defendant in Error.

No. 41307.

Supreme Court of Oklahoma.

Jan. 31, 1967.

Richard J. Spooner, Oklahoma City, for plaintiff in error.

Jarman & Jarman, by J. H. Jarman, Oklahoma City, for defendant in error.

PER CURIAM:

The parties to this appeal appear as they did in the trial court. The final pleadings are simple, consisting of a second amended petition and a verified answer.

In the petition the plaintiff alleges that he was in the peaceful possession of certain premises located in Oklahoma City and had therein certain of his possessions, the latter described in detail in Exhibit A attached to said Second Amended Petition; that plaintiff was the lessee and defendant was the lessor of said premises.

The plaintiff alleges that while in possession of said property the defendant, acting

without any right or authority, through her duly authorized agents, maliciously entered on said premises by breaking plaintiff's lock and forcibly took possession of the premises and forcibly excluded plaintiff therefrom by placing a padlock on said premises.

Plaintiff further alleges that at the time he was engaged in the construction business and occupied said premises as his place of business and kept therein tools of his trade, etc., to the possession of all of the property described in plaintiff's petition he alleged he was entitled, the same having a reasonable value of $7,400.64 at the time of said ouster.

Plaintiff further alleges that the acts of the defendant and her agent were malicious and were done with the deliberate intent to deprive plaintiff of his property and to injure him in his business by reason of which plaintiff claimed additional punitive damages in the sum of $5,000.00.

In the verified answer of the defendant above mentioned, she denied all of the allegations of the petition of plaintiff.

The plaintiff testified on his own behalf and recited that he had rented the property from defendant at a rental amounting to $55.00 per month and that he had used said premises for the purposes indicated in the petition. Plaintiff further testified that he had paid his rent for the month of October, 1960 but that in said month, after an absence from Oklahoma City, he went to the place, which he had rented, and found that the lock had been changed on the door and that he was unable to get into the property.

Plaintiff further testified that he had learned that during his absence from the city the defendant's son-in-law, Roy Hicks, had changed the locks whereupon plaintiff told the defendant that he desired to gain entry to the property but that said landlady refused to let him have a key to the door.

Plaintiff testified that he had further conversations with the defendant and that she stated she had authorized her son-in-law to remove his property and put the same in storage. Defendant continued to refuse to permit plaintiff to have his property, contending that he owed additional rent.

Plaintiff testified that he had made an inventory of the different items he had in the rented property, "based upon a fair market value price as to what he had paid for the different items * * * from memory of what he had in the store * * * and that the total fair market value thereof was $7,400.00." At this juncture in the testimony of plaintiff the Exhibit attached to the petition was offered in evidence and was, in the language of the court "received for what it is worth."

Some time thereafter, perhaps in the month of August, 1962, the plaintiff had further conversations with the defendant concerning his property and had asked to be permitted to see the property where stored, but the defendant refused. Thereafter the plaintiff testified that the fair market value of the property in question was $7,400.64.

Subsequently the court sustained the objection of the defendant to the evidence of the fair market value of the property and stated to the jury that it would be necessary for the plaintiff to deal with each item separately. The plaintiff then testified that his tools had a fair market value of $614.00, the wrecker $250.00, furniture $289.00 and some odd cents. After considerable discussion of the method of proof, the court stated:

"Now, for the Court's information and for the Court's and Jury's both, so we can understand it, you are claiming that these different items total $7,400.00 or not?"

to which counsel for plaintiff answered $7,400.64. Once again the plaintiff testified that the value of the property, which he lost, as listed in his inventory, was $7,400.00 and that he sought judgment for that sum and for punitive damages in the amount of $5,000.00.

On cross-examination defendant's counsel sought to elicit proof to the effect that the property alleged to have been converted did not total any such figure as that claimed.

The plaintiff introduced a witness by the name of Neal and from this witness elicited the evidence that his appraisal of the total value of the property involved was $6,480.81. It will be observed in this connection that this witness' valuation of the property was approximately $1,000.00 less than that testified to by the plaintiff.

At the conclusion of plaintiff's evidence the defendant interposed a motion for a directed verdict on the theory that the plaintiff having continued to claim the property, after the alleged conversion and the knowledge of the facts surrounding the alleged conversion, and to the possession of the property, estopped himself from recovering damages for the value of the property. The court overruled said motion allowing an exception and added that there was no proof as to punitive damages and sustained a demurrer thereto.

Defendant introduced as her first witness her daughter, Mrs. Hicks, who testified that the property involved was exposed and visible from the highway and that it was put aside for the purpose of protection thereof and that there had been no one in the building after the 23rd day of September, 1960, and that the property was stored in a garage close by. This witness further testified that the property in question was moved through a hole in the wall and that the original lock was placed back on the door and which moving of the property to the garage did not occur until the 4th day of June, presumably 1961, where it was at the time of the trial. The witness further testified that at the time the property was moved an inventory thereof was made by one Finley Reeder. Through this witness it was developed that the inventory was made incident to an execution which had been issued in a suit in the Justice of the Peace Court, filed by the defendant herein against the plaintiff and in which she had obtained judgment for rent in the amount of $200.00. The witness further testified that she had been appointed custodian of the property by the Justice of the Peace. The court excluded all of the evidence elicited as the result of the Justice of the Peace case, except that the witness had the property in her possession and the place where she had been keeping it.

The defendant testified that she owned the property leased to the plaintiff in the month of February, 1960, on a month to month basis. She further testified that the last rental payment was made on the 23rd day of September, 1960, which was for the months of September and October. Failing to pay the rent due on the 1st day of November, and having ascertained that the plaintiff had been missing from the rented premises, and being unable to communicate with him, she had moved the property which had been in the front of the building to the back thereof, in order to protect said property from prowlers. She further testified that she had filed two suits in the Justice of the Peace Court and that she had not been in charge of the property in any form since she filed these law suits.

On cross-examination Dr. McQuestion, the defendant, testified that she had a call from the plaintiff in November but the property was not moved until the following June. She further testified that she did not have the property in her possession when the defendant called her in November.

There was other testimony introduced in evidence, noteworthily that from Joe Wright, who identified himself as a steel worker employed by Black, Sivalls & Bryson. He testified that he had gone to the building in question a number of times from September, 1960, to and including 1961 and that he helped make an inventory of the property in the building and that he would describe the property as used, rather than new, and that he was acquainted with the usual fair market value of the property and that the value of the tools would not be more than $100.00.

Dr. McQuestion was called to the stand, after her original testimony, and at this time she stated that she did not refuse to return the plaintiff's property to him, but that she informed him that she had no jurisdiction over it, but that the court, presum-

ably the Justice of the Peace Court, did. She further testified that in November, 1960, she had told the plaintiff to "* · * * come and get his stuff and that he said I don't have any place to put it, and I said you can not expect to leave it in my building and not pay rent on it, and he said he would call me tomorrow and he didn't." She further testified that she had other conversations with him later and that he made the same statements.

The witness Lindsey testified that she was present with Mrs. McQuestion when a man came up and identified himself as Mr. Elmore. She testified that he had asked for his property at that time, namely the first of September or the last of August, 1962, and that Dr. McQuestion had told him that it was not in her hands but was in the hands of the court. The son-in-law, Hicks, testified that he did not break the lock on the door.

After all of the testimony, the remainder of which need not for the purpose of this appeal, be narrated, which however left much to be desired in attempting accurately to determine the value of the property at the time of the alleged conversion, nine of the jurors returned a verdict for plaintiff for the sum of $7,400.64, the exact amount sued for in his petition.

Subsequently a motion for new trial was interposed, the sixth ground of which being that the amount of the recovery, as specified by the verdict, was excessive and not supported by the evidence and appeared to have been given under the influence of prejudice, and in due course, at a hearing thereon, the court found that the verdict was excessive to the extent of $5,312.24 and it was recited in the Journal Entry that he could not conscientiously approve the judgment unless the plaintiff agreed to a remittitur of $5,312.24. The court further ordered that upon such remittitur being agreed to, or approved by the plaintiff, the judgment in favor of the plaintiff would be rendered for the sum of $2,088.40. The plaintiff in open court refused to agree to such remittitur and the verdict of the jury

was thereupon vacated and a motion for new trial was sustained, to which action plaintiff excepted and gave notice of appeal.

In the case of City of Tulsa v. Nicholas, Okl., 385 P.2d 816, this court said:

"The rule of law governing this situation is clearly expressed in the very recent case of Hillcrest Medical Center v. Wier, Okl., 373 P.2d 45, wherein the syllabus by the court reads: 'The granting of a new trial is within the sound judicial discretion of the trial court, and its action in so doing will not be disturbed on appeal unless the record clearly shows that the court acted arbitrarily or erred in its view of some pure unmixed question of law and that the new trial was granted wholly because of such erroneous view of the law.'

"This rule is set forth in so many Oklahoma decisions that its correctness is beyond question. See 2A Oklahoma Digest, Appeal and Error, ▮▮▮"

As appears from the record, this is a case in which a new trial was granted unless a remittitur was agreed to by the plaintiff.

This court has held upon numberless occasions that where a new trial is granted by the same judge who presided at the trial of the case, this court will require a stronger case before it will interfere with the order of the trial court in granting a new trial, than where a new trial has been refused. See in this connection Lusk v. Wilson, 81 Okl. 152, 197 P. 156; Trower v. Roberts, 17 Okl. 641, 89 P.2d 1113; Jarecki Mfg. Co. v. Thames, 151 Okl. 234, 3 P.2d 428; Harper v. Pratt, 193 Okl. 86, 141 P.2d 562.

In the case last cited in the preceding paragraph, this court held that the position occupied by the trial judge of a case places him in a better position than any other person to know whether substantial justice has been done.

This case was very carefully and very patiently tried. The parties were giv-

en latitude in the development of their respective positions, resulting in a case made of over two hundred pages. The judgment of the trial court should be and accordingly is affirmed.

All the Justices concur.

The court acknowledges the services of T. AUSTIN GAVIN, who with the aid and counsel of GARRETT LOGAN and GERALD KLEIN, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the court. The Chief Justice then assigned the case to DAVISON, J., for review and study, after which and upon consideration by the court, the foregoing opinion was adopted.