James **WRIGHT**, Appellee,

v.

**CENTRAL OKLAHOMA MILK PRODUCERS ASSOCIATION, a business trust, et al., Appellants.**

**No. 44405.**

Supreme Court of Oklahoma.

Feb. 27, 1973.

Howard K. Berry, Sr., Berry & Berry, Oklahoma City, for appellee.

Burton J. Johnson, Watts, Looney, Nichols & Johnson, Oklahoma City, for appellants.

IRWIN, Justice:

The primary issue presented is whether the evidence is sufficient to sustain a jury verdict that Appellee, James Wright (plaintiff) did not suffer pain as a result of an accident.

Plaintiff commenced proceedings to recover personal and property damages allegedly sustained by him when his car was struck by defendants' tank truck. Defendant Goodwin was driving the truck and was in the course of his employment at the time of the accident.

Plaintiff received no objective injuries as a result of the accident and he predicated his claim for personal injuries on the theory that the accident aggravated or precipitated his arthritic condition. Defendants defended the action, insofar as damages for personal injuries was concerned, on the theory that plaintiff sustained no personal injuries as a result of the accident and consequently the accident did not aggravate or precipitate plaintiff's arthritic condition.

The jury returned a verdict for plaintiff for $318.41, which consisted of the following items written on the verdict:

| | |
|---|---|
| Damages to car | $208.12 |
| Rental car | 50.29 |
| Dr. R. | 60.00 |
| | $318.41 |

Judgment was rendered according to the jury verdict and plaintiff filed a motion for a new trial. In this motion plaintiff alleged that "the jury verdict is inconsistent within itself in that it finds the issues in favor of the plaintiff upon the controversial issue of negligence and contributory negligence, purports to award damages by refunding his actual expenses for car repair, and for medical care, while it disregards and denies his correlative right of recovery for pain, discomfort and suffering."

The trial court granted plaintiff a new trial and defendants appealed.

In the trial court's order sustaining plaintiff's motion for a new trial, the following appears:

"* * * in a suit for damages for personal injuries where there is competent proof of pain and suffering and no testimony by a qualified witness that no suffering or pain was undergone, so as to raise a conflict, and an itemized verdict is returned for plaintiff which fails to award some damages for pain and suffering, then the verdict is inconsistent

within itself, and invalid. (Burkett v. Moran (1966) Okla. 410 P.2d 876, Hallford v. Schumacher (1958) Okla. 323 P. 2d 989). In the case at hand plaintiff did put on competent proof of pain and suffering while the defendants' expert witness did not deny that plaintiff's arthritis was aggravated by the accident and could have caused pain and suffering."

The cases of Burkett and Hallmark, supra, relied upon by the trial court, support the rule that where a jury returns a verdict allowing recovery for some elements of damage but specifically denying recovery for other elements of damages which have been clearly proved, and the issue of liability is the same with reference to all elements of damage, the verdict is inconsistent within itself, and plaintiff's motion for a new trial upon the ground that the verdict is not sustained by sufficient evidence and is contrary to law should be sustained.

■ Considering the record as a whole, we can not say that the verdict of the jury is inconsistent within itself, notwithstanding the jury allowed $60.00 for the services of Dr. R, and other damages, which means a finding of liability against defendants. Had the jury allowed damages for personal injuries, pain and suffering, the jury would have necessarily found that the accident aggravated or precipitated plaintiff's arthritic condition. Under the record, the jury may have found that plaintiff was entitled to be reimbursed for the expenses incurred for the services of Dr. R, and at the same time found that the accident did not aggravate or precipitate his arthritic condition. This is so because defendants denied liability in their answer but further alleged, for the purpose of limiting their liability, that "plaintiff was not injured in any collision and that all of his complaints are those from pre-existing conditions not brought about or aggravated by the accident and that all of his damages should be limited to that for the immediate repair of his vehicle *and for such examining costs*

*by medical doctor for the purpose of determining that no further injury was involved."* (emphasis ours)

Defendants' allegation in this answer limiting their liability, if any, to the repairs of the car "and for such examining costs by medical doctor for the purpose of determining that no further injury was involved" was included in the trial court's instructions in setting forth the defenses relied upon by defendants.

Under the trial court's instructions, the jury could have allowed plaintiff $60.00 for the services of Dr. R, for a medical examination as distinguished from medical treatment for injuries sustained. We hold that the jury verdict is not inconsistent within itself unless the evidence proves that plaintiff suffered pain as a result of the accident and the evidence is insufficient to support a finding that he suffered no pain as a result of the accident.

Damages for pain and suffering in the case at bar presupposes that plaintiff sustained injuries as a result of the accident and it aggravated or precipitated his arthritic condition. The burden was upon plaintiff not only to prove that he suffered pain but to also prove that the accident aggravated or precipitated his arthritic condition from which the pain flowed. The verdict of the jury which denied plaintiff damages for pain and suffering does not necessarily mean that it found that plaintiff did not suffer pain as a result of his arthritic condition, but there inheres in its verdict a finding that the accident did not aggravate or precipitate his arthritic condition. We will now consider the evidence from which the jury made its determination.

Plaintiff was an independent insurance adjuster. He testified that he was traveling west on N.W. 23rd street in Oklahoma City and had stopped at a red light where Broadway intersects N.W. 23rd; he was going to make a left turn onto Broadway; while he was stopped, defendant's tank truck hit him from the rear; he sort of blacked out; his car came to rest against

the north curb of 23rd street and he did not apply power or drive it to the point of rest; he got out of his car but he "could hardly get out and when I got out I couldn't straighten up"; and he had a severe pain in his back from "the back of my skull to here clear down to my belt line. My hands and arms were kindly bad, kind of numb."

Plaintiff testified that the back lid of his car came up and had been bent in above the bumper. He remained at the scene approximately two hours and then went to see Dr. R.

Plaintiff said that he was feeling pretty rough when he got to Dr. R's office and that his back, neck, arms, and hands were paining him. Dr. R. took some X-rays and prescribed some type of pain medicine for him.

The accident occurred on a Saturday morning and plaintiff went to see Dr. F the following Monday. Plaintiff said he wasn't feeling very well but was not suffering the pain that he had had on Saturday; Dr. F X-rayed him and gave him a prescription; there was no change in his condition; and he went to see Dr. F again the following Saturday. He said Dr. F told him he was in bad condition but that he should continue to work no matter how bad he might hurt. Plaintiff continued to work and a short time later drove to Arkansas but said he experienced discomfort and soreness in driving.

The accident occurred in April and plaintiff said that his condition constantly deteriorated and he went to see Dr. J R the following January. He said he saw Dr. J R several times but his condition was not relieved; has suffered pain ever since the accident; suffers pain in his back, head and neck; and has severe headaches occasionally.

Plaintiff introduced into evidence a bill from Dr. R for $60.00, which the jury allowed; and also the bill from Dr. J R for $235.00, which the jury did not allow. The bill of Dr. F was not introduced.

The evidence adduced on cross-examination of plaintiff was sufficient for the jury to find that plaintiff lost no income resulting from the accident and it did not keep him from performing his job in the same manner he had been performing it prior to the accident. Plaintiff, on direct examination, testified he had a camera in his car and on cross-examination testified he took two pictures of defendants' truck; didn't examine the front end of defendants' truck to see if it was damaged; and took a picture of its front and he didn't see any damage to it whatsoever.

Plaintiff did not present Dr. R or Dr. F as witnesses. Dr. R examined plaintiff the day of the accident and Dr. F examined him two days later. Plaintiff did call as a witness Dr. J R, who examined him approximately nine months after the accident. Based upon his examination of plaintiff, X-rays, and the history plaintiff had given him, this doctor was of the opinion that the accident aggravated or precipitated his arthritic condition and that he had suffered pain.

Concerning the history of plaintiff's condition, Dr. J R said plaintiff told him that while he was sitting at a stop sign he was struck in the rear by a big truck. In describing plaintiff's complaints to him and his symptoms, Dr. J R stated: "His initial complaint followed immediately after the accident to which he thought for just a brief period of time before he got out of his car that he was maybe unconscious. That when he did get out of his car he felt in quotation marks that he was almost immobile. His arm he said felt immediately clumsy and stiff and that his hands quoting were paralyzed. That his hands and arms were numb and had no feeling. That he was confused and that he remained so for several days."

Defendant Goodwin was driving the tank truck which struck plaintiff's car. Goodwin testified the tank was three-fourths full of milk; he made a sudden stop behind plaintiff; the shift of the milk in the tank caused the truck to move for-

ward; he struck plaintiff's car; and his truck stopped in one or two feet after the accident.

Goodwin said when he finally stopped he could see that the back lid of plaintiff's car had come up. Goodwin was asked to tell the jury what happened to plaintiff's car after the momentum went forward and the deck lid came up, and he replied: "Well, the car sat there for a second and he opened his door as if to get out and he looked back and then he drove out into the middle of the intersection then the car stopped then he proceeded and pulled up another I would say eight or ten feet then he stopped again and looked back out of the door and then he proceeded up to the middle of the block and pulled into the curb."

It is to be noted that Goodwin's testimony is in direct conflict with plaintiff's testimony to the effect that after his car was struck he sort of blacked out; his car came to a rest against the north curb of 23rd street and he did not apply power or drive it to the point of rest.

Goodwin further testified there were a couple of little dents in plaintiff's car but the tail lights were not broken; that he radioed his dispatcher that he had a minor accident and to send an officer to make an investigation; he moved his truck and then talked to plaintiff; and he asked plaintiff if he was all right or hurt or anything and he said no he was all right. Goodwin and plaintiff walked to a cafe a short distance and Goodwin said that plaintiff walked all right and kept up with him and was not limping or bending over in any way.

Goodwin said there was no debris or marks that would indicate an accident had occurred; that he stayed at the scene for an hour or an hour and a half and plaintiff walked around taking pictures of the truck; plaintiff did not walk in such a way that would indicate that he was injured or hurt in any way; and the truck had no marks on it that would indicate an accident.

The dispatcher that Goodwin called came to the scene, said he didn't see any signs of an accident on the street; the paint on the truck wasn't even scratched; he didn't inspect plaintiff's car but he saw that the back lid was up; plaintiff was walking around taking pictures when he got there; and was walking around just like anyone and he didn't notice anything was wrong with him.

Plaintiff did not take the witness stand to rebut the evidence of Goodwin and the dispatcher.

Defendants' witness, Dr. F, first examined plaintiff two days after the accident. He said plaintiff told him he had been involved in an accident; plaintiff complained of soreness in his upper back and neck; had some tenderness along the ulnar aspects of both of his hands; and had some stiffness and limitations of motion in his cervical spine and in his upper back and a little ulnar numbness laterally. Dr. F said he didn't find any muscle spasm and his physical examination was essentially negative except for an old fracture in his left elbow. Dr. F X-rayed his cervical dorsal spine, i. e., his neck and upper back, and the only thing he found was the arthritis. He said plaintiff had some extensive osteoarthritis in his neck and upper back.

Dr. F assumed the history that plaintiff gave him that he had been involved in an accident and had sustained a sprained injury of his neck and upper back superimposed upon his underlying arthritis. Dr. F gave him a prescription for medication to control the difficulties and told him to continue his normal activities. One week later plaintiff was re-examined by Dr. F.

The next time Dr. F examined him was twenty-five months later at the request of the attorneys for the parties. Dr. F X-rayed plaintiff again and said he still had arthritis in his neck and upper back and in one of his fingers. Dr. F said in comparing the two examinations that the results or findings in both examinations were essentially the same; and that he found no

objective findings in either examination other than plaintiff's arthritic condition.

Dr. F said that plaintiff "is full of arthritis" and he has it all through his neck and has arthritic changes involving the foramia in his neck but in his opinion it was not "a trauma or accidentally produced result".

On cross-examination Dr. F said that a person who has degenerative arthritis or accumulations of arthritic changes in their system then sustains an accident or a traumatic injury could have their condition aggravated or inflamed. He also said that it was possible that plaintiff's arthritis was aggravated or inflamed to some extent by the accident.

On Re-direct, Dr. F was asked if he did not base a considerable part of his evaluation of plaintiff on the history plaintiff gave him about his condition, his feelings and so forth and Dr. F said: "Well, I think I qualified this history to be true. This is my qualifications because he has a lot of arthritis. If he had never had any prior difficulty why that is my statement, I have no reason to disbelieve him."

█ The evidence is in conflict concerning whether plaintiff sustained any injuries as a result of the accident that would aggravate or precipitate his arthritic condition. The jury resolved this conflict in favor of defendants. There is sufficient competent evidence in the record to support the jury verdict that plaintiff sustained no injuries as a result of the accident and that such accident did not aggravate or precipitate his arthritic condition.

The two cases (Burkett v. Moran, Okl., 410 P.2d 876; and Hallford v. Schumacher, Okl., 323 P.2d 989) relied upon by the trial court to sustain plaintiff's motion for a new trial are clearly distinguishable from the case at bar. In Burkett, the jury allowed $239.27 for automobile repair, $2,065.51 medical expenses and $450.00 for one months salary. No allowance was made for pain and suffering. We said that we "find uncontradicted evidence to the effect that after the accident, plaintiff

suffered severe pain; that he was in the hospital, in traction, for about three weeks on one occasion and about two weeks on another; and that during this time, and afterwards, he was receiving treatment and injections for relief from pain." We found that the verdict was inconsistent within itself and granted a new trial. There, we said under the uncontradicted evidence, if defendant was liable to plaintiff at all, plaintiff was entitled to recover damages for past pain and suffering. Although the uncontradicted evidence in the case at bar might prove that plaintiff suffered pain from his arthritic condition, the uncontradicted evidence does not show that plaintiff sustained injuries as a result of the accident and that the accident aggravated or precipitated the arthritic condition and the jury's verdict is not inconsistent within itself.

In Hallford, the jury returned a verdict for $4,374.85 for medical, hospital and funeral expenses but specifically denied any recovery for pain and suffering. We said the proof of pain and suffering was clear, convincing and undisputed. The only question presented in that appeal was whether the trial court abused its discretion in granting a new trial for the sole purpose of determining damages for pain and suffering.

Plaintiff argues that the rule set forth in Northwest National Bank v. Boecking Construction Company, Okl., 361 P.2d 686, is controlling in our determining whether the trial court erred in granting a new trial. In that case we held the trial court in granting a new trial is vested with a very large and extended discretion and its order granting a new trial will not be disturbed on appeal in the absence of a clear and convincing showing that such action constituted error on an unmixed question of law, or that such action was arbitrary and capricious.

█ We agree with the rule of law above set forth but in applying such rule we also must consider the rule set forth in Fletcher v. Meadow Gold Company, Okl.,

472 P.2d 885. In Fletcher we held that in an action for damages, where the evidence is conflicting but the verdict of the jury is sustained by competent evidence, it is an abuse of discretion for the trial court to grant a new trial upon the ground that the verdict of the jury is contrary to the evidence.

The evidence concerning whether plaintiff sustained injuries as a result of the accident and the accident aggravated or precipitated plaintiff's arthritic condition is in conflict. The jury resolved the conflict in favor of defendants. The trial court abused its discretion in granting plaintiff a new trial.

Certiorari granted; Decision of the Court of Appeals and Order of the trial court granting plaintiff a new trial reversed.

DAVISON, C. J., WILLIAMS, V. C. J., and HODGES, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.