2005 OK 5

**Terry CAPSHAW, Plaintiff/Appellee,**

**v.**

**GULF INSURANCE COMPANY, a Missouri Insurance Carrier, Koch Trucking, Inc., a foreign corporation, Stan Koch & Sons Trucking, Inc., a foreign corporation, and Sam Coronado, Defendants/Appellants.**

No. 99,093.

Supreme Court of Oklahoma.

Feb. 8, 2005.

Barry K. Roberts, Norman, OK, Joe Farnan and Steve Langer, Purcell, OK, for Appellee.

Earl D. Mills, Dan K. Jones, Oklahoma City, OK, for Appellants.[1]

OPALA, J.

¶ 1 Two issues are presented on certiorari: (1) Did COCA err when it reversed the nisi prius judge's new-trial order? and (2) Did COCA identify and apply on appeal the correct standard of review? Because both questions are answered in the negative, we reverse the nisi prius new-trial grant by applying an analysis that differs from that used by COCA.

## I.

### ANATOMY OF THE LITIGATION

¶ 2 This action arose from an automobile accident in which a pickup truck driven by Terry Capshaw (Capshaw, plaintiff or appellee) was struck from the rear by a semi tractor driven by Sam Coronado, an employee of Koch Trucking, Inc. (together with Stan Koch & Sons Trucking Inc., and Gulf Insurance Co., collectively to be known as Coronado, defendant or appellant). *The basic facts are uncontested.* Immediately preceding the accident Capshaw was stopped at an intersection awaiting a green traffic signal. Coronado came to a stop behind him. Capshaw proceeded through the intersection and then stopped to make a left turn. Coronado's truck rear-ended plaintiff's pickup.

¶ 3 A trial by jury dealt with contested issues of liability and with whether Capshaw sustained any injury from this collision.[2] Coronado also urged Capshaw's contributory negligence. At the close of the evidence, after instructions were read, the verdict form was handed to the jury. Although the parties tendered for the court's use in the case Oklahoma Uniform Jury Instruction (OUJI) verdict forms,[3] none objected to the nonstandard form selected by the judge.[4] By a unanimous verdict, the jury found none of the parties to have been negligent and awarded no recovery.[5] The trial judge—in

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. Testimony reveals that plaintiff has sustained previous injury to and received treatment for the body parts claimed to have been harmed in this cause.

3. The plaintiff requested that the OUJI blue verdict form be used (which finds in favor of plaintiff and provides for damages to be assessed) and the pink form (which finds for the defendant). The defense submitted the pink, blue and white forms. The latter addresses solely the issue of contributory negligence.

4. Transcript, p. 151.

5. The verdict form used is not among those approved by OUJI. As returned to the court, the form provides the contents that follow:

WE, THE JURY, being duly empaneled and sworn, find as follows:
1. Plaintiff's negligence (0–100%) ..................... *0 %*
2. Defendant's negligence (0–100%) ..................... *0 %*
  Total = 0% or 100 %
(If the percentage of Plaintiff's negligence is *equal to or less than* the Defendant's negligence, then answer No. 3 below.)

conversation with both parties' counsel and outside the jury's hearing—then expressed *sua sponte* his concern that he submitted to the jury a *flawed verdict form.*[6] Although the form permitted a no-negligence finding, the judge did not think the jury was free to find, under the submitted theories of the case, none of the parties negligent but rather was required to find the sum of the parties' negligence to be no less than one hundred percent.[7] Both parties' counsel seemed deferential to the judge's concern. Capshaw's lawyer suggested a mistrial. Coronado's counsel urged that the jury be re-instructed and afforded the opportunity to deliberate further. *The judge accepted neither suggestion.* He directed the verdict be read and accepted. *The jury was discharged.* Upon the judge's request for post-verdict motions,

> 3. Plaintiff has sustained damages as a direct result of this collision without regard to the percentage of contributory negligence of either party, in the total sum of.... $ *0* (Note—This amount will be reduced by the Judge by the percentage found in Finding No. 1 above)
> (If the percentage of Plaintiff's negligence is *more than* the Defendant's negligence, then answer No. 4 below.)
> 4. Defendant is entitled to judgment..................... —
> The record reflects prior to returning a verdict the jury presented a question for the trial judge. The members had reached a decision but were uncertain how to reflect it on the verdict sheet. The judge prepared instruction number 17 and asked the lawyers if they had any objection to its being sent to the jury. There was no objection by counsel. Instruction 17 does not appear in the record.

6. The transcript reveals:

> * * * "THE COURT: I think we may have messed up on our verdict form because I don't think they can do zero, zero since there wasn't any defense of unavoidable accident.
> MR. JONES: They have to find negligence.
> THE COURT: I think they do.
> MR. FARNAN: Okay.
> MR. LANGER: Move for a mistrial.
> THE COURT: The way they instructed—
> MR. JONES: No. Not a mistrial.
> MR. FARNAN: Move for a mistrial.
> MR. JONES: Judge, that's not a mistrial. We can send them back to re-deliberate. There's no mistrial because they incorrectly filled out the verdict form. I think you just re-instruct them that they need to read it again and do it again. There is nothing detrimental to the trial of this case.
> THE COURT: I think I would need to instruct them that they must find a total of one hundred percent liability.
> MR. JONES: Yes.
> THE COURT: In this case.
> MR. JONES: Yes.
> MR. FARNAN: But you already have.
> THE COURT: But I think the confusing thing was the verdict form had zero or one hundred percent which is what I normally use when you have an unavoidable accident. And I didn't take that out of my original, I didn't take it out of the verdict form.
> MR. JONES: I think you should instruct that they have to find, have a finding of negligence
> before they can find damages. But it isn't detrimental to the trial and the deliberation process at all, Judge.
> MR. FARNAN: The only problem with it of course is that if they find the defendants' negligence zero this is one of those ones like you said would indicate that maybe we should have a new trial.
> THE COURT: Well, we're not there yet though.
> MR. JONES: No.
> MR. FARNAN: But their finding of zero percent negligence on the defendant and zero percent on the, it's like act of God or something here. So I'm renewing my request for a mistrial.
> MR. JONES: Well, Judge, still isn't detrimental to the trial of the case, I don't know if I need to restate this or not, Judge, it's just that they can be instructed to resume their deliberations and to find negligence one way or the other. It doesn't affect their damage finding at all. And our defense was a complete defense, they don't have to find damages, Judge. And it seems to me as simple as just telling them they have to find negligence one way or the other.
> THE COURT: Would you be satisfied with that instruction?
> MR. LANGER: No.
> THE COURT: Why not?
> MR. LANGER: Well, this seems to be too confused to straighten out.
> MR. JONES: It doesn't seem to be too confused, I've seen many times and ya'll have seen before that juries have to be instructed to recommence deliberations if they filled it out, it doesn't make the trial process detrimental at all, Judge. They just got confused on the percentages of negligence. I mean they can find a hundred percent negligence on my client—
> THE COURT: Would you get the jury instructions. Court is going to order the verdict form read. And you can make your motion afterwards." * * *
> After the verdict form was read the following occurred in open court.
> THE COURT: * * * "Motion?
> MR. FARNAN: Oh, a mistrial, a new trial, judgment notwithstanding the verdict.
> THE COURT: *Sustained. Motion for new trial granted.*" * * *

7. For information about the judge's colloquy see note 6.

Capshaw moved for a mistrial, a new trial or judgment notwithstanding the verdict. When the new-trial motion was sustained, Coronado appealed.

¶ 4 On appeal Coronado urged the trial judge abused his discretion because: (1) the record is silent concerning the basis for a new-trial grant; (2) if the basis is an alleged error in the blank verdict form, Capshaw, by his failure timely to preserve this perceived defect, waived the error he now alleges in his motion for new trial;[8] (3) the trial judge could have used less drastic means to correct the verdict; and (4) there was competent evidence to support the jury's verdict.[9] According to Capshaw, the trial court did not err. This is so because the verdict form—which permitted the jury to find that none of the litigants was negligent even though the defense of unavoidable accident was not urged—is fraught with fundamental (manifest) error. According to plaintiff, this error misled the jury and detrimentally affected its assessment of damages.

¶ 5 COCA did not address itself to whether the verdict form was tainted by fundamental error. Its opinion is bottomed on the ratio-

nale that a jury may find liability and yet limit or assess no damages.[10] It concluded that although insofar as it dealt with the litigants' negligence the jury verdict could have been corrected, its decision not to award damages adequately serves as a resolution of the dispute and as grounds to deny the new-trial motion.[11] Any defect in the form was not fatal, and a new trial should not have been granted. COCA reversed the trial court's order and remanded the cause with instructions to reinstate the jury's verdict that allowed no recovery. Capshaw sought certiorari relief.

## II.

### COCA ERRED IN ITS SELECTION AND APPLICATION OF THE PROPER STANDARD OF REVIEW

■ ¶ 6 We first turn to Capshaw's argument that COCA's pronouncement fails to apply the correct standard of appellate review. COCA's opinion reveals that the issue before it was reviewed as one of law[12] and the standard to be used as that of abused discretion.[13] It then references the terms of

---

**8.** Coronado urged in his brief that Capshaw "failed to preserve error regarding the verdict form." See appellant's brief, p. 16. He includes in this argument that because Capshaw failed to raise the form's alleged error until after the jury returned its verdict, he hence chose to take a chance on the jury verdict and the error is waived. See appellant's brief, p. 16 citing *Lawton Transit Mix, Inc. v. Larson*, 1969 OK 83, ¶ 10, 455 P.2d 696, 698–99. He further asserts because Capshaw failed to object to the court's proposed verdict form he invited error. See appellant's brief, p. 16, citing *Ferrell v. State Department of Highways*, 1963 OK 261, ¶ 10, 387 P.2d 129, 132. *Ferrell* stands for the proposition that an appellant will not be permitted to secure a reversal of a judgment upon a contended error which he has invited and acquiesced in or assume a position inconsistent with that taken in the trial court.

Coronado urged an additional issue on appeal—that Capshaw failed to preserve his right to move for a new trial because his oral motion did not comply with the terms of 12 O.S.2001 § 654(A). The cited provisions require a new-trial motion to be in writing. COCA addressed this issue and held (1) Capshaw's oral motion for a new trial does not meet the § 654 statutory requirement and (2) this procedural scenario does not fall within the "made during a hearing or trial" exception of 12 O.S.2001 § 2007(B)(1). Because Coronado failed to object when the oral

motion was interposed, COCA ruled the error could not be raised for the first time on appeal. The issue was not re-urged on certiorari: we hence express no opinion on the correctness of COCA's resolution.

**9.** Coronado's position rests on Oklahoma jurisprudence that permits a jury to find negligence and yet award no damages. Appellants' brief, p. 7–8.

**10.** COCA opinion p. 7 (citing *Pine Island RV Resort, Inc. v. Resort Management, Inc.*, 1996 OK 83, 922 P.2d 609; *Baker v. Locke Supply Co.*, 1987 OK 27, 736 P.2d 155; *Wright v. Central Oklahoma Milk Producers Assoc.*, 1973 OK 15, 509 P.2d 464).

**11.** COCA opinion p. 6. The opinion does not specify what part of the jury verdict was correctable. Given COCA's treatment of the damages issue, we assume it refers to that portion of the jury verdict dealing with the litigants' negligence.

**12.** COCA cites *Baptist Building Corp. v. Barnes*, 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69, for the proposition that where facts are undisputed an appeal presents only a question of law.

**13.** COCA relies on *Bennett v. Hall*, 1967 OK 122, ¶ 5, 431 P.2d 339, 340–41, for the abuse-of-dis-

20 O.S.2001 § 3001.1,[14] whose review standard deals with appellate reversal of a jury verdict by granting a new trial. This confusion is magnified by *some of COCA's* language that appears later in the opinion and, according to Capshaw, incorrectly places the burden of proof on him as *the appellee.*[15]

¶ 7 A motion for new trial is addressed to the sound discretion of the trial court.[16] When a trial court grants a new trial and its decision is appealed, we will indulge every presumption in favor of that decision's correctness.[17] In reviewing a trial court's grant of new trial, the standard of review an appellate court must apply is whether the trial court abused its discretion.[18] Because a trial court's discretion is broad its ruling will not be disturbed by the reviewing tribunal in the absence of a clear showing of a manifest error or abuse of discretion with respect to a pure, simple and unmixed material question of law.[19]

¶ 8 An appellate court's standard of review is not mere ritualistic legal liturgy.

It defines the permissible sweep of critical testing to be undertaken by a reviewing court. Its recitation must be correct and serve more significantly than as an empty gesture.[20] Although initially identifying and appearing to apply the correct standard of review—abuse of discretion—COCA also injects a different standard, that embodied in the terms of § 3001.1.[21] The cited provision is inapplicable to today's procedural scenario. That section targets only appellate dispositions that reverse judgments on jury verdict by granting a new trial. Today's cause does not deal with that type of disposition. Even if we were to conclude that the § 3001.1 criteria were not employed by COCA—and hence their insertion merely superfluous—COCA's reference to those statutory terms appears misleading.

¶ 9 Moreover, the burden to establish a trial court's abused discretion when granting a new trial rests upon the appellant, not on the appellee. COCA's choice of words—"Capshaw has not show(n) otherwise"—seemingly infers that appellee has not met

cretion review standard. COCA's opinion provides "[a]s a general rule, a motion for new trial is addressed to the trial court's sound discretion and, absent error as to a pure and unmixed question of law, or arbitrary and capricious action, every presumption should be indulged in favor of the trial court's ruling on appeal." COCA opinion, p. 4.

14. The terms of 20 O.S.2001 § 3001.1 provide:
   "No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

15. The opinion's text complained of by Capshaw provides:
   * * * "Thus, the confusion here, if any, in a verdict of zero negligence is not a factor affecting the zero damage assessment. *Capshaw has not show [sic] otherwise in light of the authorities cited just above.*" * * * (emphasis supplied)

16. *Propst v. Alexander,* 1995 OK 57, ¶ 8, 898 P.2d 141, 144–45 (citing *Austin v. Cockings,* 1994 OK 29, ¶ 9–10, 871 P.2d 33, 34; *Fitts v. Standard Life & Accident Ins. Co.,* 1974 OK 60, ¶ 27, 522 P.2d 1040, 1043; *Elmore v. McQuestion,* 1967 OK 24,

¶ 24, 423 P.2d 1016,1019; *Horn v. Sturm,* 1965 OK 52, ¶ 21, 408 P.2d 541, 546).

17. *Propst, supra* note 16 at ¶ 8 at 144–45.

18. *Bishop's Restaurants, Inc., of Tulsa v. Whomble,* 1960 OK 44, ¶ 5–6, 355 P.2d 560, 562–63 (citing *Browne v. Bassett,* 1942 OK 196, ¶ 7, 126 P.2d 705, 706, 191 Okla. 22 (overruled on other grounds); *Dowell, Inc. v. Layton,* 1953 OK 187, ¶ 29, 261 P.2d 885, 891); *Propst, supra* note 16 at ¶ 8 at 144–45; *Austin, supra* note 16 at ¶ 9–10 at 34.

   A court abuses its discretion when it uses that standard to an end or purpose that is justified neither by reason nor by evidence. Abuse of discretion lies in a manifestly unreasonable act, supported by untenable grounds or reasons. *Patel v. OMH Medical Center, Inc.,* 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194.

19. *Bishop's Restaurants, supra* note 18 at ¶ 5–6 at 562–63.

20. Mere incantation of the mantra expressing the correct standard of review is an empty gesture when contradicted by an opinion's language revealing actual utilization of another standard. *Easley v. Cromartie,* 532 U.S. 234, 260, 121 S.Ct. 1452, 1471, 149 L.Ed.2d 430 (2001)(Thomas, J., dissenting).

21. For the terms of § 3001.1 see note 14.

his burden to show the trial court's decision is error free. It was Coronado's, not Capshaw's, burden on appeal to show that the trial judge abused his discretion in deciding a critical question of law. In view of its reference to conflicting tests and of COCA's oblique language for defining an appellant's burden on review, we cannot say that COCA's pronouncement was guided by the correctly applicable standard of review.

## III.

## THE NEW–TRIAL MOTION

### A.

### ARGUMENTS ON CERTIORARI

¶ 10 Having settled the proper review standard to be used, we now turn to whether the trial court erred as a matter of law when it granted plaintiff's new-trial motion. COCA's opinion rests on the teaching that a jury may legitimately find negligence without assessing damages.[22] Capshaw agrees that this is indeed a correct statement of Oklahoma jurisprudence, but that a jury determination carries legitimacy only if the triers were properly instructed. He asserts use either of a flawed verdict form or of confus-

ing instructions that mislead the jury and result in a verdict that is different from that which it otherwise would have rendered may not be allowed to stand.[23] Here, the form permitted no-negligence findings for any party which, he contends, is a fundamentally flawed statement of Oklahoma law.[24] This confused and misled the jury. According to plaintiff, the critical rule of law which might have been used here—*that the apportioned aggregate negligence by all parties must total one hundred percent*—was omitted from the non-standard verdict form.[25] The trial judge, urges Capshaw, recognized an error because no proper evaluation of the evidence can justify a finding of no negligence by the defendant.[26] According to plaintiff, this error led the jury to make findings about damages that would have been different but for this defect.[27] The trial judge did not hence err in exercising his discretion by a new-trial grant.

¶ 11 Coronado responds (1) plaintiff's contention the verdict form confused the jury and tainted the trial's outcome is merely speculative and hence cannot stand as the basis for a new trial and (2) even if the verdict form were incorrect there is here

22. COCA opinion, p. 7 (citing *Pine Island, supra* note 10).

23. Capshaw cites *Digital Design Group, Inc. v. Information Builders, Inc.,* 2001 OK 21, ¶ 36, 24 P.3d 834, 845 and *Dunnington v. Loeser,* 1915 OK 407, 149 P. 1161, 48 Okla. 636, syl. 1. *Dunnington* deals with the giving of incorrect instructions and teaches that if the court instructs the jury as to the law and does so incorrectly, it is prejudicial error. *Supra.* In *Digital* we held giving jury instructions that did not distinguish between contract and libel damages was reversible error where the evidence did not support the contract claim. Because it was impossible to determine from the verdict form which damages the jury attributed to each claim, there was a probability that the jurors were misled. *Digital, supra.*

24. "The underlying principle of comparative negligence is founded on attaching liability in direct proportion to the fault of each person whose negligence caused the damage." (Petition for certiorari, p. 5 quoting *Gaither By and Through Chalfin v. City of Tulsa,* 1983 OK 61, 664 P.2d 1026, 1031).

25. Plaintiff refers to the OUJI white form which deals solely with the issue of comparative negligence. According to Capshaw, the judge concluded that the law requires that any finding of fact has to result in a determination that the comparative negligence of the parties must total one hundred percent. The court ordered a new trial because of the jury was misled by the verdict form. (Plaintiff's reply on certiorari, p. 3)

Capshaw does not contend that the jury instructions are flawed, only the verdict form.

26. According to plaintiff, the jury heard undisputed evidence that Coronado struck his vehicle from behind while he was waiting to make a left turn, and there was neither plea nor proof of unavoidable accident. (Certiorari petition, p. 7.) A review of the transcript reveals that on direct examination by plaintiff's lawyer, Coronado admits bumping into Capshaw's vehicle. (Transcript, p. 30) On cross examination, Coronado testified that he tried to stop his vehicle from hitting plaintiff's pickup truck. (Transcript, p. 42)

27. See part I of the text, Anatomy of the Litigation.

competent proof to support the jury's verdict.[28]

## B.

### CAPSHAW FAILED TIMELY TO EXCEPT TO THE BLANK VERDICT FORM

¶ 12 Capshaw's contention is, in essence, twofold: (1) the blank verdict form was fraught with a fatal facial defect and (2) this defect operated to taint the jury's decision against awarding damages. Coronado's COCA briefs (although not his certiorari materials) urge that Capshaw failed timely to except to the verdict form and hence waived the error he later alleged in his new-trial motion.[29] Concern over whether an efficacious exception to the form was indeed made

by Capshaw may explain his characterization of the form as tainted by "fundamental error." [30] The record is clear that neither party excepted to the blank verdict form before its submission to the jury.[31] The trial judge's *sua sponte* challenge to the form in his post-trial colloquy with counsel was the basis of Capshaw's new-trial motion.[32] Although COCA's opinion did not address whether Capshaw made a timely challenge to the blank form and hence preserved the asserted defect as a basis for his new-trial motion, we must examine Coronado's argument in light of the scenario revealed by the record.[33]

¶ 13 An allegation of error in a motion for new trial must be based on an error preserved in the course of trial proceedings.[34] If the motion is rested on an

---

28. Oklahoma recognizes the legal doctrine of judicial estoppel. This doctrine provides a party who knowingly assumed a particular position dealing with matters of fact is estopped from assuming an inconsistent position to the prejudice of the adverse party. This rule ordinarily applies to inconsistent positions assumed in the course of the same judicial proceeding or in subsequent proceedings where the parties and questions are identical. *Panama Processes, S.A. v. Cities Service Co.*, 1990 OK 66, ¶¶ 21–22, 796 P.2d 276, 287–88; *Messler v. Simmons Gun Specialties, Inc.*, 1984 OK 35, ¶ 18, 687 P.2d 121, 128. Coronado's position on certiorari is that if there were error in the blank verdict form it does not rise to the level of reversible error. The verdict should be upheld because it is supported by competent evidence. See appellant's response to Capshaw's petition for certiorari, p. 5, citing *Teague v. United Truck Service*, 1972 OK 97, ¶ 14, 499 P.2d 380, 383–84. This appears to be in discord with his trial position. There he seemingly agreed with the trial judge that the aggregate of the parties' negligence should total one hundred percent and that the jury should find negligence. The judge should re-instruct the jury to find negligence "one way or the other" and permit it to deliberate further. (See note 6.) Although the doctrine of judicial estoppel might apply against Coronado, we need not reach it here because Capshaw did not raise the estoppel doctrine either on appeal or on certiorari.

29. "Plaintiff's counsel was provided a copy of the jury instructions and verdict forms and asked by the Court if he had any objections to which he stated that he did not. (Transcript. Page 151, lines 18–23). Therefore, Plaintiff invited the error by failing to object." (Appellant's Brief, p. 16).

30. Capshaw urges the form's flaw is "fundamental error." This legal doctrine is narrowly de-

fined as a substantial misstatement of a fundamental legal principle which appears on the face of the instruction. Unlike "ordinary" trial error, fundamental error is reviewable even where no exception is taken. If plaintiff were uncertain that he made an on-the-record exception to the verdict form submitted to the jury, this might explain his characterization of the urged flaw to be fundamental error. Whether this doctrine applies in the context of this cause is no more than an assertion that the form is fatally flawed. For a more thorough discussion of the fundamental-error doctrine see *Sellars v. McCullough*, 1989 OK 155, ¶¶ 8–12,784 P.2d 1060, 1062–63.

31. Trial transcript, p. 151.

32. For information about the judge's colloquy see note 6.

33. Issues not presented in a certiorari petition will not be considered by the Supreme Court. If the Court of Civil Appeals did not decide all properly preserved and briefed issues, the Supreme Court may, if it should vacate COCA's opinion, address undecided matters. *Hough v. Leonard*, 1993 OK 112, ¶ 15–16, 867 P.2d 438, 445–46.

34. Oklahoma statutes, 12 O.S.2001 § 551 et seq., provide a comprehensive scheme that governs trials. The terms of 12 O.S.2001 § 651 provide:

"A new trial is a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party: * * *

error that does not stand preserved for review, it is of no avail as a party's support for its new-trial quest.[35] Oklahoma's extant jurisprudence reveals that an exception to an alleged defect in a blank verdict form must be lodged before the form is given to the jury and that failure to do so constitutes waiver of the error.[36] Here, both parties submitted proposed verdict forms for the court's use and both were aware of the blank form submitted by the court. Neither party excepted.[37] The nisi prius judge's post-verdict *sua sponte* notice of an alleged defect, upon which plaintiff's new-trial motion came to be based, was too late. An exception to a blank verdict form may not be interposed for the first time in a motion for new trial. To preserve that error for review here, Capshaw must have excepted to the blank verdict form at the pre-submission stage of the case, i.e., simultaneously with exceptions to jury instructions.

> 8. Error of law occurring at the trial and objected to by the party making the application." * * *

**35.** For the terms of § 651 see note 34.

**36.** Oklahoma's jurisprudence gives ample indication that an exception to the blank verdict form should be made before submission to the jury. "Plaintiff did not object to the instructions or to the form of the verdict submitted. If she desired the verdict form to be more explicit, her request should have been made prior to its submission to the jury." *Holden v. Coussens*, 1978 OK 30, ¶ 8, 576 P.2d 758, 761 (holding that plaintiff's request that inquiry be made of the jury about its intent behind the verdict was not a request to poll the jury); "In the absence of timely objection, this error [a claim of fundamental prejudicial error in the verdict form] is insufficient to warrant reversal of the verdict and judgment of the jury." *LPCX Corp. v. Faulkner*, 1991 OK 46, ¶ 32, 818 P.2d 431, 440–41 (holding defendants were precluded from challenging the validity of jury verdict forms for failure to have complained at trial); In *Nichols v. Mid–Continent Pipe Line Co.*, 1996 OK 118, ¶¶ 20–21, 933 P.2d 272, 280, we held that under Oklahoma's Uniform Contribution Among Tortfeasors Act (UCATA), a pre-trial settlement between a rancher and a pipeline company could not be used as a credit against the rancher's eventual recovery against an oil company and another pipeline company where the first pipeline company's liability was not submitted to the jury. This was so because it was in the second pipeline company's power to preserve its claim for this credit by either a pre-submission exception to the blank verdict form or a post-submission exception when the verdict was

## C.

## THE VERDICT FORM IN CONTEST CONTAINS NO MANIFEST ERROR

¶ 14 Because Capshaw urges the blank verdict form is fundamentally (manifestly) flawed—a claim that may be presented absent a preserved trial-court exception—we proceed to review the verdict form in contest. We find it not fatally defective on its face. It is neither inconsistent nor incapable of translation into a final jury resolution fit as a legal judgment. Capshaw's assertion—the aggregate of the parties' negligence must total one hundred percent is mistakenly absent from the form—is incorrect. The form provides that negligence, if any, which is to be apportioned among the parties must *total* either zero *or* one hundred percent. This is no misstatement of law.

returned. The court concluded an exception could have been interposed at both times. If the flaw was in the form of the instructions then it qualified for a pre-submission exception, and, if it also affected the absence of a resolution of the other party, then it qualified as a post-submission, pre-discharge exception. The appellant in *Oxley v. City of Tulsa*, 1989 OK 166, ¶¶ 27–28, 794 P.2d 742, 748, urged the trial court erred in refusing to submit a special interrogatory to the jury, which resulted in a verdict whose basis is unknown. The transcript revealed the appellant did not request a special interrogatory prior to the time the jury was discharged. We held the exception to the form of a jury verdict is deemed waived unless it is made at the time verdict is received. While the opinion's text references only one rule, the appellant failed twice to lodge an exception below, first to the submitted verdict form and second to the returned jury verdict. In *Morgan v. Oklahoma Natural Gas Co.*, 1977 OK 49, ¶ 4, 561 P.2d 1363, 1365, plaintiff's sole proposition of error was that the verdict returned by the jury was contrary to the law and evidence. We applied the rule that an exception to the form of verdict must be made before the jury is discharged. The concluding text provides, "[w]e find no prejudicial error as the form of the verdict given to and returned by the jury." *Morgan*, *supra* at ¶ 4 at 1365.

**37.** Capshaw's briefs and certiorari materials do not urge that his post-verdict request for a new trial (based upon the trial judge's *sua sponte* concern about the verdict form) constitutes an objection to the form of the jury's verdict, and we do not read them to assert this position.

The mere happening of an accident is not indicative of negligence. The jury is the trier of fact. In any negligence case the jury is free to find that none of the parties was negligent. *Its freedom to make this choice does not depend on the plead defense of unavoidable accident.* Finding no negligence on the part of any party is the jury's prerogative, not an aberration. The jury here was at liberty to assess negligence among the parties in any percentage (equaling zero or one hundred percent) expressive of its findings. The form simply combines the rules of law that pertain to negligence into a single statement. It provides the jury the full panoply of available legal options pressed for by the litigants: negligence, no negligence or contributory negligence. Apportioning one hundred percent negligence among the parties is an option embodied within the form's parameters. The jury did not in this case choose to make this finding.

¶ 15 Neither party argued that the form restricts the jury's choices. If the form might be perceived as tainted it is only because it might lead one to conclude that when the parties' apportioned negligence does not equal one hundred percent, the verdict should be zero. The form gives the jury a choice between zero and one hundred percent. This is not a fatally defective choice. We would be straining to conclude that it operates to strip the jury of any of its authority to assess negligence in any proportion to its findings. Here, the jury disagreed with the notion of foisting negligence on the defendant and of the defendant foisting contributory negligence on the plaintiff. The record reveals the jury could have inferred that both vehicles were proceeding properly and in the exercise of due care, and that the collision between them occurred without negligence on the part of either driver.[38] It could also have determined that plaintiff's alleged injuries, if any, were pre-existing and neither the result of this accident nor aggravated by its occurrence.[39] As a matter of law

one is free to deduce that since both parties are declared free of negligence neither can foist liability upon the other. In short, the plaintiff was declared not to be entitled to recover.[40] The order granting a new trial is hence erroneous as a matter of law.

## IV.

### SUMMARY

¶ 16 To preserve for review an alleged defect in a blank verdict form, an exception to the form must be lodged in the presubmission stage of case, i.e., in conjunction with exceptions to jury instructions. The nisi prius judge's *sua sponte* notice of an alleged defect, upon which plaintiff's newtrial motion was based, came too late. The error was not preserved for review by a timely exception from Capshaw. Neither is the blank verdict form tainted by manifest error. Although a non-standard verdict form was used, it permitted a jury to find negligence, no negligence or contributory negligence in any proportion that totaled either zero or one hundred percent. The jury, as the trier of fact, is free to decide that neither party was negligent and hence none is entitled to damages. The record reveals competent evidence to support this finding. The trial court erred when it granted plaintiff's quest for a new trial. We hence reverse the trial court's new-trial grant, reinstate the jury verdict, and order judgment to be entered on the verdict.

¶ 17 On certiorari previously granted upon Capshaw's petition, the Court of Civil Appeals' opinion is vacated; the trial court's new-trial grant is reversed and the judgment on the reinstated jury verdict is ordered to be entered.

¶ 18 WINCHESTER, V.J., LAVENDER, HARGRAVE, EDMONDSON and TAYLOR, JJ., concur.

¶ 19 KAUGER, J., concurs in result.

---

**38.** See note 26.

**39.** See note 2.

**40.** Because we hold that the verdict form is not fatally flawed, it is not necessary that we address

Capshaw's second argument (that the alleged flaw in the verdict form confused the jury) nor Coronado's contention that the form was correctable.

¶ 20 WATT, C.J., dissents.

¶ 21 COLBERT, J., disqualified.

WATT, C.J., dissenting.

¶ 1 The trial court submitted a flawed verdict form which confused and misled the jury resulting in a verdict of 0% negligence. The trial judge recognized his error and properly granted a motion for new trial. Because I would affirm the trial court's granting of the motion for new trial, I respectfully dissent.